# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL SVIGALS, | CIVIL No. 18-1736 (NLH/JS) |
| Plaintiff, | **OPINION** |
| v. | |
| LOURDES IMAGING ASSOCIATES, P.A., GLENN ARTICOLO, JOSEPH BROUDY, JOSEPH DELLA-PERUTA, KATHLEEN GREATREX, EUGENE KLIFTO, and JAMES MONTOURI | |
| Defendants. | |

<u>**APPEARANCES**</u>:

JASON ADAM LEVINE
JOHN S. SUMMERS
THOMAS N. BROWN
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
ONE LOGAN SQUARE - 27TH FLOOR
PHILADELPHIA, PA 19103

   *On behalf of Plaintiff Paul Svigals.*

CHERYL ANN GARBER
GARBER LAW LLC
302 SPRUCE STREET - SUITE B
DOYLESTOWN, PA 18901

   *On behalf of Defendants Glenn Articolo, Joseph Broudy, Joseph Della-Peruta, Kathleen Greatrex, Eugene Klifto, and James Montouri.*

R. JAMES KRAVITZ
STEVEN JAMES LINK
FOX ROTHSCHILD LLP
PRINCETON PIKE CORPORATE CENTER
997 LENOX DRIVE - BUILDING 3
LAWRENCEVILLE, NJ 08648-2311

   *On behalf of Defendant Lourdes Imaging Associates, P.A.*

**HILLMAN, District Judge**

This case concerns a shareholder suit by a minority shareholder in a closely held business. Currently before the Court are Defendants' Motions to Dismiss and Plaintiff's Motion for Leave to File a Second Amended Complaint. For the reasons discussed below, Defendants' Motions to Dismiss will be denied and Plaintiff's Motion for Leave to File a Second Amended Complaint will be granted.

**BACKGROUND**

Our recitation of the facts is taken from Plaintiff's First Amended Complaint (the "FAC"). Plaintiff is Paul Svigals, M.D., a vascular and interventional radiologist. In 2007, via a Shareholder Physician Agreement (the "Employment Agreement"), Dr. Svigals joined as a director, shareholder, and employee of Defendant Lourdes Imaging Associates, P.A. ("LIA"). LIA is a radiology group practice comprised of board-certified radiologists. Dr. Svigals is also a part-owner of SJVI, LLC ("SJVI"),[1] which is a freestanding outpatient center providing numerous interventional radiology procedures. LIA contracted with SJVI in 2008, via SJVI's Exclusive Interventional Radiologist Services Agreement (the "SJVI-LIA Agreement"), to be

---

[1] Plaintiff is a founding member of SJVI and still owns fifty percent of the entity. The other member (or members) of the LLC is not named in the FAC.

the exclusive provider of radiology services at SJVI in exchange for payment.

Defendants Drs. Glenn Articolo, Joseph Broudy, Joseph Della-Peruta, Kathleen Greatrex, Eugene Klifto, and James Montouri (collectively, "Shareholder Defendants") are also all shareholders and employees of LIA.[2] Dr. Broudy is the President of LIA. In 2017, Plaintiff learned that multiple LIA shareholders were allegedly improperly enriching themselves in violation of their employment agreements. Plaintiff alleges that their employment agreements limited them to eight weeks of vacation per year. But, Plaintiff asserts, all Shareholder Defendants – except Dr. Broudy – breached their agreements by taking excessive vacations.[3] Plaintiff did not take excessive vacation.

In addition, Plaintiff learned that various shareholders were overpaid for coverage work.[4] Plaintiff alleges that coverage work had been set at $2,000 per day by policy and practice at LIA. Plaintiff learned, however, that all

---

[2] There are additional LIA radiologists who are shareholders and employees of LIA who have not been named in this action.

[3] On average, Plaintiff calculates that these shareholders took over two times more vacation per year than allowed under their employment agreement.

[4] Plaintiff defines coverage work as "on-call diagnostic radiology shifts" at Lourdes Health Systems ("LHS").

Shareholder Defendants - except Drs. Broudy and Greatrex - were paid at a higher per diem rate.[5] Plaintiff alleges while a number of shareholders were receiving higher coverage work rates, he was receiving the standard $2,000 per diem rate and was forced by LIA to "take an unfair and unreasonable amount of call [assignments] in violation of" the Employment Agreement.

After discovering these alleged violations,[6] Plaintiff requested that the LIA Board of Directors retain a consultant to investigate his claims. Plaintiff alleges the consultant reported "multiple improprieties" in May 2017. As a result, Plaintiff (or his counsel) requested documents and information from LIA throughout November and December of that year, and early January 2018. Plaintiff was allegedly only given financial statements - one out of eleven items requested.

Plaintiff also allegedly informed the LIA Board of Directors about his findings concerning allegedly improper vacation and coverage work rates. At the December 2017 meeting of the LIA Board of Directors, the shareholders (except Plaintiff) voted to send Plaintiff a notice of intention to terminate Plaintiff's employment at LIA. On December 19, 2017

---

[5] Plaintiff alleges these payments ranged anywhere between $3,000 to $7,500 per diem.

[6] Plaintiff also alleges "other improprieties" but does not provide any further details.

LIA mailed Plaintiff a letter (the "Notice Letter") stating it
constituted "formal notice . . . of LIA's intention to terminate
[his] employment for breach" of the Employment Agreement
(alterations in the FAC).  The Notice Letter stated the reason
for termination was Plaintiff's conflict of interest created by
ownership and management of SJVI and employment with LIA, which
violated the Employment Agreement's provision requiring
"undivided loyalty."  The Notice Letter directed Plaintiff to
cure the purported conflict by "divesting [his] interest in
SJVI[]" (alterations in the FAC).

Plaintiff refused to do so.  In January 2018, the
shareholders (again, except Plaintiff) voted to terminate
Plaintiff's employment at LIA.  Thereafter, LIA sent a letter
(the "Termination Letter") to Plaintiff stating he was fired
pursuant to the Notice Letter.  Plaintiff was terminated from
LIA on January 19, 2018.  He brought this action on February 7,
2018.

Plaintiff alleges five counts.  Against Defendant LIA,
Plaintiff alleges a breach of contract claim (Count One) and a
breach of the implied covenant of good faith and fair dealing
(Count Two).  Against the Shareholder Defendants, Plaintiff
alleges a minority shareholder oppression claim (Count Three), a
so-called direct claim for breach of fiduciary duty (Count
Four), and a civil conspiracy claim (Count Five).

Defendant LIA and Shareholder Defendants filed motions to dismiss on March 19, 2018.  Plaintiff filed the FAC on April 2, 2018.  Defendant LIA and Shareholder Defendants filed motions to dismiss the FAC on April 16, 2018.  These have been fully briefed by all parties.

Plaintiff thereafter, on July 6, 2018, filed a Motion for Leave to File a Second Amended Complaint.  Besides minor changes to the existing complaint, the Proposed Second Amended Complaint (the "SAC") adds two more claims – with supporting facts - against LIA.  First, Plaintiff seeks to add another breach of contract claim, this time for a breach of the Deferred Compensation Agreement (the "DCA").  Second, Plaintiff wishes to add a declaratory judgment claim concerning whether the DCA still contains a restrictive covenant.  The gist of these new claims is that LIA improperly breached the DCA by claiming Plaintiff breached a restrictive covenant that was no longer part of the agreement.  This motion has also been fully briefed by all parties.  Thus, these three motions are ripe for adjudication.

## ANALYSIS

### A.   Subject Matter Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between Plaintiff and Defendants and the amount in controversy is alleged to

exceed $75,000. Plaintiff is a citizen of Pennsylvania. Defendant LIA is alleged to be a professional services corporation organized under New Jersey law and having its principal place of business in this state. The remaining defendants are alleged to be individual citizens of New Jersey.[7]

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original)

---

[7] By separate order, the parties have been directed to certify the citizenship of the respective parties.

(citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." <u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our decision in <u>Twombly</u> expounded the pleading standard for 'all

civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before <u>Twombly</u>."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

**C.   Shareholder Defendants' Motion to Dismiss**

Shareholder Defendants move to dismiss the three counts brought against them by Plaintiff: shareholder oppression, breach of fiduciary duty, and civil conspiracy. Before addressing the count-specific arguments made by Shareholder Defendants, this Court must first address whether the shareholder oppression and breach of fiduciary duty claims against Shareholder Defendants must be dismissed under New Jersey's "economic loss doctrine." Generally stated, this doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." <u>Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.</u>, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting <u>Duquesne Light Co. v. Westinghouse Elec. Co.</u>, 66 F.3d 604, 618 (3d Cir. 1995)).

Shareholder Defendants assert Plaintiff's "entitlement to economic losses flows directly from obligations set forth in a

contract between the parties," thus prohibiting Plaintiff from bringing a tort claim to recover for these alleged wrongs. State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 678 (D.N.J. 2009). If this Court agrees, Shareholder Defendants argue, then it must dismiss the civil conspiracy claim against them as well, as that claim may only lie when there is a live, underlying tort claim.

Plaintiff opposes Shareholder Defendants' argument, countering – among other things - that the economic loss doctrine does not apply if there is no contractual privity between the parties. Succinctly put, "the absence of a contract between a plaintiff and defendant . . . precludes the application of the economic loss doctrine." SRC Constr. Corp. v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 799 (D.N.J. 2013). Here, Plaintiff argues, the Shareholder Defendants are not parties to the Employment Agreement. This agreement was solely between Plaintiff and LIA.

Plaintiff is correct.[8] The purpose of the economic loss doctrine, in part, is to prohibit plaintiffs from using tort law to alter contractual remedies or to replace a breach of contract action. SRC Constr. Corp., 935 F. Supp. 2d at 799-800. That purpose is not implicated where parties are not in contractual

---

[8] Tellingly, Shareholder Defendants did not respond to this argument in their reply belief.

privity.  Thus, this Court need not reach whether the claims stem solely from the contract.  Accordingly, this Court will not dismiss any claims against Shareholder Defendants based on the economic loss doctrine.  This Court will address Shareholder Defendants' remaining arguments in turn, <u>infra</u>.

### a. **<u>Whether Count Three, the Shareholder Oppression Claim, Should be Dismissed</u>**

Shareholder Defendants present three separate arguments concerning Plaintiff's shareholder oppression claim.  This Court will address each of the Shareholder Defendants' arguments in turn, <u>infra</u>.

#### i. <u>Whether Plaintiff has Standing to Sue</u>

Shareholder Defendants argue that Plaintiff lacks standing to assert a claim of shareholder oppression.  Shareholder Defendants contend that a shareholder oppression claim may only be brought "by one or more directors or by one or more shareholders."  N.J. STAT. ANN. 14A:12-7(2).  In support, Shareholder Defendants cite the Shareholders' Agreement, which contains provisions providing automatic return of all shares when a shareholder's employment is terminated.[9]  Shareholder Defendants assert this was effective the day of Plaintiff's

---

[9] The Shareholders' Agreement was not attached to the complaint and was first presented to this Court in Defendants' Motions to Dismiss.  The Court will only consider this document for purposes of argument.  This Court does not here opine on its authenticity or veracity.

termination, January 19, 2018, which was a few weeks before he brought suit, on February 7, 2018.

Plaintiff counters with three general arguments.  First, Plaintiff argues LIA must satisfy the court "that the full purchase price of the shares, plus whatever additional costs, expenses and fees as may be awarded, will be paid when due and payable" before a shareholder loses his rights.  In re Alpha Centauri Co., Inc., No. 05-32850(DHS), 2006 Bankr. LEXIS 4098, at *7 (Bankr. D.N.J. Jan. 25, 2006) (quoting N.J. STAT. ANN. 14A:12-7(8)(f)) (internal quotations omitted).  Second, Plaintiff argues Shareholder Defendants do not cite any case law holding a shareholder does not have standing if he is technically no longer a shareholder.  Finally, Plaintiff argues the purpose animating the statute should not allow the oppressive conduct of a shareholder to rob another shareholder of standing to sue.

Shareholder Defendants rely exclusively on the Shareholders' Agreement in support of their argument.  We will assume, for purposes of this argument, that this Court may properly consider this document without converting Shareholder Defendants' motion into one for summary judgment.  Even considering the Shareholders' Agreement, Shareholder Defendants have not shown, as a matter of law, that Plaintiff is no longer a shareholder.

The section cited to in the Shareholders' Agreement, § 5, states that the "Withdrawal of a Shareholder" only occurs in the following situations:

> (i) Shareholder voluntarily terminates his or her employment with the Corporation for any reason whatsoever; (ii) the Corporation terminates Shareholder's employment with the Corporation pursuant to the terms of the Shareholder's Physician Employment Agreement; (iii) the Corporation does not renew Shareholder's Physician Employment Agreement; or (iv) Shareholder becomes disqualified to render professional services under the laws of New Jersey . . . .

Shareholder Defendants only assert Plaintiff was terminated for cause under the Employment Agreement.

But, this point is hotly disputed. As explained immediately _infra_, this Court cannot decide at this early stage that Plaintiff was correctly terminated for cause. As a result, Plaintiff may still be a shareholder under the Shareholders' Agreement because he could have been wrongfully terminated.[10] As a result, this Court finds Plaintiff has preliminarily shown standing and will not dismiss this claim.

ii. Whether Plaintiff was Terminated for Cause

Next, Shareholder Defendants argue Plaintiff was terminated for cause. Shareholder Defendants assert "a minority shareholder's termination for good cause does not violate any

---

[10] Even without the Shareholders' Agreement, Shareholder Defendants agree in their reply brief that "a wrongfully terminated shareholder can maintain an oppression claim."

reasonable expectation of continued employment, nor does it constitute oppression." Hammer v. Hair Sys. Inc., No. A-1475-14T1, 2017 N.J. Super. Unpub. LEXIS 1411, at *4 (N.J. Super. Ct. App. Div. June 9, 2017) (citing Exadaktilos v. Cinnaminson Realty Co., Inc., 400 A.2d 554 (N.J. Super. Ct. Law Div. 1979)). The cause for Plaintiffs termination, Shareholder Defendants state, was Plaintiff's conflict of interest because he served as both a shareholder and director of LIA and had an ownership interest and management role with SJVI. As explained supra, these two entities were contractually bound and, allegedly, Plaintiff directed SJVI to stop payments to LIA. This allegedly evidenced a conflict of interest which required Shareholder Defendants to terminate Plaintiff.

Plaintiff counters, arguing the FAC has plausibly stated a claim for relief. Moreover, Plaintiff argues, even if this Court were to reject Plaintiff's wrongful termination theory of shareholder oppression, Plaintiff still cites three other actions taken by Shareholder Defendants that constitute shareholder oppression. These were not challenged by Shareholder Defendants and should therefore lift the shareholder oppression claim past Shareholder Defendants' Motion to Dismiss.

Plaintiff has plausibly claimed wrongful termination. Plaintiff states in the FAC, under ¶ 97(d), that Shareholder Defendants "voted to terminate Dr. Svigals' employment without

cause in retaliation for raising . . . concerns about the
management and operation of LIA." On a motion to dismiss, this
Court must make all reasonable inferences in favor of Plaintiff.
Doing so here requires the Court to find Plaintiff's termination
may have been wrongful.

Moreover, it is unclear at this early stage in the
litigation whether Plaintiff's actions concerning SJVI actually
violated the Employment Agreement.[11] The relevant part of the
Employment Agreement, ¶ 2, states:

> The Physician agrees to report to the Board of Directors
> and to devote the Physician's full time, energy, skill
> and efforts, with undivided loyalty, to the performance
> of the Physician's duties and obligations in connection
> with the Physician's work under this Agreement . . . .

The import of that provision, with respect to Plaintiff's
actions, is not yet clear factually or legally. Whether
Plaintiff's actions constituted a lack of "undivided loyalty" or
whether loyalty was required in all aspects of Plaintiff's
personal and professional life outside LIA is one of many open
questions to which Shareholder Defendants have failed to provide
an answer. The Court will not dismiss the shareholder
oppression claim insofar as it is based on wrongful termination.

Moreover, even assuming this could constitute cause for

---

[11] The Employment Agreement was not attached to the Complaint and
is therefore not properly before the Court. It is only
considered for the sake of argument.

termination under the Employment Agreement, Shareholder Defendants do not provide this Court with any case law requiring it to dismiss Plaintiff's claim. The case law cited by Shareholder Defendants showed courts which relied on a more fulsome record in order to come to their conclusions. Shareholder Defendants do not cite case law – at the motion to dismiss stage – that shows a shareholder oppression claim must be dismissed if cause existed under an employment agreement, even though the allegedly oppressed shareholder may have been terminated for a different, wrongful reason.

Accordingly, this Court will not dismiss the shareholder oppression claim. Not only do Shareholder Defendants not provide this Court with authority allowing it to find no wrongful termination here, Shareholder Defendants do not challenge the other three bases upon which Plaintiff asserts his shareholder oppression claim. Shareholder Defendants are not disclosed from presenting this argument again once the record is more complete.

iii. <u>Whether Plaintiff is Estopped from Pursuing the Shareholder Oppression Claim</u>

Finally, Shareholder Defendants argue Plaintiff should be equitably estopped from pursuing the shareholder oppression claim because of his knowledge of and acquiescence in their alleged misdeeds. Shareholder defendants assert that estoppel

bars "relief when a shareholder or director had or should have had knowledge of alleged misconduct but failed to act." Brenner v. Berkowitz, 634 A.2d 1019, 1029 (N.J. 1993) (citing Frances v. United Jersey Bank, 432 A.2d 814, 822 (N.J. 1981)). Unfortunately, Shareholder Defendants are not particularly clear about their factual theory of estoppel.

Shareholder Defendants assert that SJVI paid $50,000 per month to LIA starting in July 2009. This modified the original agreement to pay $2,000 per diem. Plaintiff allegedly signed each check from SJVI to LIA in this amount, evidencing his knowledge and acquiescence. Thus, Shareholder Defendants argue, Plaintiff should be estopped from complaining of the allegedly improper conduct of paying some shareholders in excess of the standard per diem rate.

Plaintiff counters with the argument that, generally, this Court will not grant a motion to dismiss on the basis of an affirmative defense. There is one exception to that general rule: "[I]f the predicate establishing the defense is apparent from the face of the complaint," then this Court must grant a motion to dismiss brought on the basis of an affirmative defense. Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n. 10 (3d Cir. 1978).

This Court will not dismiss this claim on the grounds of equitable estoppel at this stage in the litigation. First,

Shareholder Defendants have failed to connect the factual dots. The Court cannot – without various assumptions being made – connect $50,000 monthly payments from SJVI to LIA to the underlying improper conduct. This Court cannot rule as a matter of law if the factual support does not clearly establish the right. Second, knowledge and acquiescence may not have occurred simultaneously, which is necessary for an estoppel claim. The FAC clearly shows that once Plaintiff learned of improprieties, he worked to have the LIA Board of Directors correct them. Shareholder Defendants have not provided case law showing that payment under this sort of protest should be considered "acquiescence." Moreover, the fact of acquiescence is not clear from the face of the FAC. Third, while the payments may have estopped a shareholder oppression claim based on the improper coverage work rates, those same payments cannot show – based on the FAC – acquiescence in the improper amount of vacation time taken by numerous Shareholder Defendants. That theory is therefore still live and can – on its own – support a shareholder oppression claim.

As a result, this Court will not dismiss Plaintiff's shareholder oppression claim. Again, as stated previously, this resolution does not preclude Shareholder Defendants' from raising these same arguments in a procedurally proper manner at a later stage in the litigation.

### b. **Whether Count Four, the Breach of Fiduciary Duty Claim, Should be Dismissed**

Shareholder Defendants present four arguments in support of their request to dismiss the breach of fiduciary duty claim. Two of the arguments will be addressed in turn, _infra_. The other two,[12] however, being rendered moot by this Court's decision that the claim is direct, will not be addressed.

#### i. Whether the Claim is a Derivative or Direct Claim

Shareholder Defendants argue Plaintiff's breach of fiduciary duty claim is a derivative claim, belonging to LIA. If the claim is derivative, Shareholder Defendants contend, then it must be brought by LIA, not by Plaintiff. Therefore, this Court would be required to dismiss the claim. Plaintiff counters that this is a direct claim, because special harm was felt solely by him – or by a select group of shareholders – and not by LIA as a whole.

Both sides have ably presented the law. "Claims of breach of fiduciary duty on the part of directors will . . . be generally regarded as derivative claims unless the injury to shares is distinct." _Strasenburgh v. Straubmuller_, 683 A.2d

---

[12] These arguments concern whether the prerequisites to a derivative suit have been met and whether this Court should interpret the claim as a direct claim, even if derivative, because it involves a closely-held business. Both of these are mooted by this Court's decision that the FAC states a direct claim.

818, 830 (N.J. 1996) (citing Small v. Goldman, 637 F. Supp. 1030
(D.N.J. 1986)).  An injury is distinct when it is "sustained by
. . . a particular shareholder" or is a "violation of a duty
to[] a particular shareholder."  Brown v. Brown, 731 A.2d 1212,
1215 (N.J. Super. Ct. App. Div. 1999).  In other words,
Plaintiff must show a "special injury," which is "a wrong
suffered by [a] plaintiff that was not suffered by all
stockholders generally or where the wrong involves a contractual
right of the stockholders, such as the right to vote."
Strasenburgh, 683 A.2d at 829 (quoting In re Tri-Star Pictures,
Inc., 634 A.2d 319, 330 (Del. 1993)).  "To determine whether a
complaint states a derivative or an individual cause of action,
courts examine the nature of the wrongs alleged in the body of
the complaint, not the plaintiff's designation or stated
intention."  Id. at 830 (citing Lipton v. News Int'l Plc, 514
A.2d 1075, 1078 (Del. 1986)).

As Strasenburgh sagely states: "The statement of such
principles is easy.  The actual determination of whether a suit
involves derivative or individual claims of shareholders is
not."  Id.  Shareholder Defendants are correct, this is not a
direct claim merely because the FAC states it is a direct claim.
But, Plaintiff has pleaded multiple injuries which were not
suffered by all shareholders generally or equally.

Plaintiff was, at least, subject to one solely individual

harm:  he claims he was wrongfully terminated.  This is a harm that no other shareholder could possibly (nor did) share with him.  He was also subject to individualized harm because, he claims, he was required to take unfair and unreasonable amounts of time "on call."  While this has the possibility of being shared with other shareholders in a similar position, it was not alleged to have been shared in this situation.

Moreover, some harms were allegedly shared by multiple shareholders, but did not affect all shareholders equally.  For example, some shareholders received lower coverage work rates than others, including Plaintiff.  Some shareholders received less vacation days than others, including Plaintiff.  Shareholder Defendants are right, that to the extent this is considered a claim of waste, it would be derivative.  But, this is only one view of the claim.  Plaintiff seems to also complain because he was not being paid equally, regardless of whether payment above the standard per diem rate constituted waste to LIA.  Shareholder Defendants assert this wrong was shared by multiple shareholders (admittedly less than all), but present no case law holding that if a group of shareholders are wronged in a way another group is not, a direct claim may not be brought.  This is what is alleged to have happened in this case.

At this point in the litigation, this Court will allow the breach of fiduciary duty claims to go forward as direct claims.

Shareholder Defendants request for dismissal on this ground will be denied.

### ii. Whether the Fiduciary Duty Claim Must be Dismissed because It Is Based on an Employment Dispute

Shareholder Defendants also argue that where a breach of fiduciary duty claim is based upon an employment dispute, the breach claim should be dismissed.  Shareholder Defendants admit that this Court has not substantively addressed this rule nor have they brought forward any New Jersey state rulings on this point.  Instead, Shareholder Defendants argue that Delaware law should be applied when addressing a "novel issue[] of corporate law" in New Jersey.  Gavornik v. LPL Fin. LLC, No. 14-955, 2014 U.S. Dist. LEXIS 107146, at *19 (D.N.J. Aug. 5, 2014) (quoting IBS Fin. Corp. v. Seidman & Assocs., L.L.C., 136 F.3d 940, 949-50 (3d Cir. 1998)).  Plaintiff counters that it is inappropriate to rely upon Delaware law where a New Jersey court has not made a decision when a federal court is sitting in diversity.

This Court will not decide this issue at this point in the proceedings.  With no controlling law, it cannot be said the Plaintiff's fiduciary duty claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6).  While this Court does not agree that it is as limited in its powers as Plaintiff argues, it does find that it is particularly hazardous to create new law in the absence of a factual record.  Shareholder Defendants

should feel free, when a record has been established, to raise this argument again.  At this time, this Court will not dismiss the breach of fiduciary duty claim on this ground.

### c. Whether Count Five, the Civil Conspiracy Claim, Should be Dismissed

Shareholder Defendants also state four reasons that this Court should dismiss Plaintiff's civil conspiracy claim.  Before addressing Shareholder Defendants' four substantive arguments, this Court again states it will not dismiss the civil conspiracy claim on the basis that there is no underlying claim.  The shareholder oppression and breach of fiduciary duty claims remain, so the civil conspiracy claim – as derivative of those claims – is still properly pleaded.

In New Jersey, civil conspiracy has four elements: "(1) combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages."  Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

### i. Whether the Shareholder Defendants May Legally Conspire among Themselves

First, Shareholder Defendants argue that they could not legally conspire among themselves.  Shareholder Defendants cite Marjac, LLC v. Trenk, which states "individual agents, officers, or employees of a corporation, acting in their representative

capacities," cannot conspire among themselves. No. 06-1440, 2006 U.S. Dist. LEXIS 91574, at *52-53 (D.N.J. Dec. 19, 2006) (citing <u>Rutherfoord v. Presbyterian-Univ. Hosp.</u>, 612 A.2d 500 (Pa. Super. Ct. 1992)). But, Shareholder Defendants admit, a conspiracy may still exist if they were acting as individuals, "for their sole personal benefit." <u>Gen. Refractories Co. v. Fireman's Fund Ins. Co.</u>, 337 F.3d 297, 313 (3d Cir. 2003) (quoting <u>Heffernan v. Hunter</u>, 189 F.3d 405, 412 (3d Cir. 1999)) (internal quotation marks omitted). In other words, "officers . . . acting 'outside the course and scope of their employment,' . . . are no longer representing the employer entity." <u>Sunkett v. Misci</u>, 183 F. Supp. 2d 691, 722 (D.N.J. 2002) (quoting <u>Heffernan</u>, 189 F.3d at 412).

Plaintiff counters that it does not allege LIA was a part of the conspiracy. Moreover, Plaintiff argues it alleges at ¶ 114 of the FAC that the conspiratorial actions were taken not in a representative capacity but either outside the scope of Shareholder Defendants' employment or in their individual capacity.

While Shareholder Defendants' argument is compelling, it is not enough to defeat this claim at this early stage. The FAC states that these actions may have been taken in Shareholder Defendants' "individual capacities" and that they were not "acting on behalf of LIA in committing the acts in furtherance

24

of the conspiracy." So, even assuming Shareholder Defendants are correct in their statement of the law, this Court must accept the allegations in the complaint that these actions were not taken within the scope of their employment.

The Court is cognizant of the fact that the actions complained of - permitting excessive amounts of vacation, permitting exorbitant payments for coverage, demanding an unfair and unreasonable amount of call, wrongfully terminating Plaintiff - may not have been taken in Shareholder Defendants' individual capacity. But, the mere probability does not disclose the possibility or plausibility that these actions were taken in Shareholder Defendants' individual capacity. At this stage, the Court will not dismiss this claim on this ground. Shareholder Defendants are free to raise this argument again on a fuller factual record.

### ii. Whether Plaintiff Pleaded Special Damages

Second, Shareholder Defendants argue the civil conspiracy claim must be dismissed for failure to plead special damages. Shareholder Defendants base this argument on Federal Rule of Civil Procedure 9(g), which states that "an item of special damages . . . must be specifically stated" and two unreported cases from this District. See Delzotti v. Morris, No. 14-7223 (JBS)(AMD), 2015 U.S. Dist. LEXIS 120286, at *23-25 (D.N.J. Sept. 10, 2015); Tiburon Lockers, Inc. v. Fletcher, No. 15-6970,

2016 U.S. Dist. LEXIS 113560, at *14-15 (D.N.J. Aug. 24, 2016). Shareholder Defendants also argue that Plaintiff must "plead special damages with particularity."

Plaintiff states he has properly pleaded special damages because he stated at paragraph 116 of the FAC that he "suffered civil conspiracy special damages, including without limitation interruptions of income and lost income." This, Plaintiff asserts, is enough to put the Shareholder Defendants on notice of the special damages, which is the underlying purpose of Rule 9(g).

This Court will not dismiss Plaintiff's civil conspiracy claim because of a failure to plead special damages. Shareholder Defendants do not argue that Plaintiff's special damages are not "special" but rather that they are not stated with enough "particularity" or "specificity." This Court notes the "particularity" requirement of Rule 9(b) may be analogous to – but is not interchangeable with – the "specifically stated" requirement of Rule 9(g). See 5A CHARLES ALAN WRIGHT, ARTHUR P. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1311 (3d ed. 2004) ("Today it seems more accurate to say it is easier to satisfy the 'specifically stated' requirement of Rule 9(g) than the 'particularity' standard of Rule 9(b)."). Shareholder Defendants' case law is unhelpful, as neither case discusses the "specifically stated" requirement in detail. Delzotti discusses

the difference between "special" and "general" damages while
Tiburon Lockers, Inc. concerns a complaint that did not state
any special damages. Delzotti, 2015 U.S. Dist. LEXIS 120286, at
*23-25; Tiburon Lockers, Inc., 2016 U.S. Dist. LEXIS 113560, at
*14-15.

Plaintiff, on the other hand, does at least cite a reported
case from this District where specificity is addressed. In John
Wiley & Sons, Inc. v. Rivadeneyra, a judge of this Court found
that alleging "lost profits in the United States' textbook
market due to unauthorized sales" contained enough specificity
to allege special damages for a civil conspiracy claim. 179 F.
Supp. 3d 407, 412 (D.N.J. 2016). Similarly, in Galicki v. New
Jersey, another judge of this Court found that damages
"including but not limited to loss of time, gas, and wages that
cannot be reclaimed, other economic losses such as payment of
tolls under false pretenses, to be falsely imprisoned and/or
restrained in their vehicles, and to suffer emotional damages"
was sufficient to satisfy the Rule 9(g) requirement. No. 14-169
(JLL), 2016 U.S. Dist. LEXIS 126076, at *63 (D.N.J. Sept. 15,
2016). Plaintiff's special damages are sufficiently similar to
the claims made in these cases to satisfy Rule 9(g) at this
early stage. Accordingly, this Court will not dismiss
Plaintiff's claim for special damages.

### iii. <u>Whether the Civil Conspiracy Allegations are Conclusory</u>

Third, Shareholder Defendants argue that the civil conspiracy claims are conclusory. Shareholder Defendants assert that the allegations in the FAC for civil conspiracy are so conclusory that they are unable to withstand the scrutiny of <u>Twombly</u> and <u>Iqbal</u>. Specifically, Shareholder Defendants complain that Plaintiff has not alleged the who, what, where, and when with enough specificity. It seems Shareholder Defendants demand, for example, the exact time and location of certain meetings.

This Court finds the allegations are not conclusory.[13] Plaintiff alleges the individuals involved in the conspiracy, Shareholder Defendants. Plaintiff alleges the object of the conspiracy, as this Court explained <u>supra</u>. Plaintiff alleges the general time when the agreement was made and executed, in conversations between the Shareholder Defendants before board meetings and in actions taken at board meetings. Although the allegations are not precise, they are more than conclusory. The allegations provide enough information to allow this claim to survive summary judgment.

---

[13] This Court notes for the record that many of the same allegations made under the civil conspiracy heading were also made in other portions of the FAC – and were not alleged to be conclusory by Shareholder Defendants.

####      iv.  Whether New Jersey Law Recognizes a Claim for
              Civil Conspiracy to Commit a Breach of Contract

Finally, Shareholder Defendants argue that a civil conspiracy cannot legally have as its object breach of contract. See, e.g., Trico Equip. Inc. v. Manor, No. 08-5561 (RBK)(KMW), 2011 U.S. Dist. LEXIS 17936, at *23-25 (D.N.J. Feb. 22, 2011); Doherty v. Hertz Corp., No. 1:10-cv-359 (NLH)(KMW), 2010 U.S. Dist. LEXIS 124714, at * 23-25 (D.N.J. Nov. 24, 2010). Plaintiff counters that the civil conspiracy claim is not based on the breach of the Employment Agreement,[14] but on his shareholder oppression and breach of fiduciary duty claims. This Court agrees and will not dismiss the civil conspiracy claim on these grounds.

**D.   LIA's Motion to Dismiss**

Defendant LIA moves to dismiss the two counts alleged against it in the FAC, breach of contract and breach of the implied covenant of good faith and fair dealing.  This Court will address each count in turn.

### a. Whether Count One, the Breach of Contract Claim, Should be Dismissed

Defendant LIA argues that the breach of contract claim

---

[14] In fact, Plaintiff even states in ¶ 115 of the FAC that the "civil conspiracy claim is not based on LIA's breach of Dr. Svigals' Employment Agreement."  Moreover, these cannot be based on a breach of contract because there was no contractual privity between Shareholder Defendants and Plaintiff.

should be dismissed because Plaintiff's retaliation theory for his termination is implausible based on the facts he alleged in his original complaint and the FAC.  In essence, LIA argues that, after ten years, LIA finally realized Plaintiff had a conflict of interest when he ordered SJVI to stop paying $50,000 per month to LIA under the SJVI-LIA Agreement.[15]  This showed a conflict, or divided loyalty, which was enough under the Employment Agreement to fire Plaintiff for cause.

Plaintiff retorts that LIA's arguments are merely arguments over which version of the facts to believe.  Plaintiff asserts, on the same facts, that there was no conflict of interest and that Plaintiff was fired for his objections to the way certain shareholders were acting.  Plaintiff argues, if the real reason for his firing was not his loyalty but retaliation, then a breach of contract action is still properly pleaded.

Defendant LIA responds by citing case law supporting the proposition that the actual reason for termination does not matter in this breach of contract action.  <u>Barker v. Our Lady of Mount Carmel School</u> states "where the right to terminate a contract is absolute under the wording in an agreement, the

---

[15] LIA requests that this Court take into account the allegations made in the original complaint that were removed in the FAC. Because it appears Plaintiff does not contest the Court considering these allegations, the Court will do so for purposes of this argument.

motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective." No. 12-4308, 2016 U.S. Dist. LEXIS 118067, at *48 (D.N.J. Sept. 1, 2016) (quoting Karl's Sales & Serv., Inc. v. Gimbel Bros., 592 A.2d 647, 650-51 (N.J. Super. Ct. App. Div. 1991)).

LIA is correct in that the motivation for termination does not matter as long as the right to terminate is clear under the contract. But, as discussed supra, it is not entirely clear what the contract means by "undivided loyalty." For example, it is not clear whether undivided loyalty must be shown merely in the scope of employment or in all aspects of Plaintiff's professional and personal life. The scope of Plaintiff's employment seemingly does not embrace his role at SJVI. LIA unfortunately does not provide an answer, instead assuming the import of the contract without providing legal or factual support.

Moreover, the course of dealing of the two parties provides at least circumstantial evidence that Plaintiff's dual position was not considered divided loyalty by LIA. The SJVI-LIA Agreement was negotiated after Plaintiff signed his Employment Agreement. This seems to have been an instance of divided loyalty that LIA neglects to address in its briefing. And, LIA does not address the fact that Plaintiff served in his dual capacity for approximately ten years. Again, this seems to be

circumstantial evidence that LIA did not view this at the time as the inherent conflict that it now asserts existed after the relationship soured for other alleged reasons.

Accordingly, this Court declines to dismiss the breach of contract claim. LIA is free to assert this argument again on a fuller factual record.

### b. **Whether Count Two, the Breach of the Implied Covenant of Good Faith and Fair Dealing Claim, Should be Dismissed**

In arguing that the breach of the implied covenant of good faith and fair dealing should be dismissed, LIA presents three arguments. This Court will address each argument in turn.

Before it does so, this Court must first address LIA's insistence on this Court considering the declarations of two individuals, Dr. Broudy and Anne Charyna and attached exhibits. LIA requests that this Court grants its motion to dismiss, or in the alternative, convert the motion into one for summary judgment and grant it in light of the attached declarations and exhibits.

Although Rule 12(d) provides that a court should treat a Rule 12(b)(6) or 12(c) motion as a motion for summary judgment whenever matters outside the pleadings are considered, the Third Circuit has clarified that "[m]erely attaching documents to a . . . motion . . . does not convert it to a motion under Rule 56." CitiSteel USA, Inc. v. Gen. Elec. Co., 78 F. App'x. 832, 834–35

(3d Cir. 2003). In ruling on a motion to dismiss, a court has
"'discretion to address evidence outside the complaint . . . .'"
Id. at 835 (quoting Pryor v. Nat'l Collegiate Athletic Ass'n,
288 F.3d 548, 559 (3d Cir. 2002)). Thus, the court "'may
consider an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document.'" Id. (quoting PBGC v. White
Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)). But, it is
entirely within this Court's discretion whether it chooses to do
so or not.

This Court declines to exercise its discretion to either
convert this Rule 12(b)(6) motion into a Rule 56 motion for
summary judgment or to consider evidence outside of the
complaint. A motion for summary judgment is not yet ripe. It
would be imprudent, and possibly prejudicial to the parties, to
convert this motion at such an early stage. Moreover, this
Court may not consider the new allegations presented in the
declarations as there is no indication that the documents are
"undisputedly authentic." As a result, this Court will confine
its analysis to the allegations disclosed in the pleadings.

     i. Whether the Claim is Based on the Same Alleged
       Conduct as the Breach of Contract Claim

First, LIA argues that the good faith and fair dealing
claim is based on the same alleged conduct as the breach of

contract claim. LIA states that both rely on the actions relating to Plaintiff's allegedly wrongful termination. LIA cites case law which it asserts require this Court to dismiss a good faith and fair dealing claim as duplicative of a breach of contract claim. See Kapossy v. McGraw-Hill, Inc., 921 F. Supp. 234, 248-49 (D.N.J. 1996) (dismissing a good faith and fair dealing claim because it was "wholly duplicative of the claims, proofs, and alleged damages" asserted in two other counts of the complaint); Borbely v. Nationwide Mut. Ins. Co., 547 F. Supp. 959, 973 (D.N.J. 1981) (granting defendant judgment notwithstanding verdict based on a lack of evidence presented at trial to support good faith and fair dealing claim).

Plaintiff resists this characterization, pointing to the FAC, where he states a good faith and fair dealing claim based on: (1) his entitlement under the Employment Agreement to the same amount of vacation as others, (2) his entitlement under the Employment Agreement to the same compensation for coverage work as others, or (3) if this Court determines LIA performed the Employment Agreement, that it did so in bad faith (citing the Notice Letter and his allegedly retaliatory termination). Plaintiff also asserts that LIA's case law does not stand for the proposition that a good faith and fair dealing claim must be dismissed if it is duplicative of a breach of contract claim.

This Court will not dismiss the good faith and fair dealing

claim based on LIA's argument here.  First, even if this Court

agreed with LIA's characterization of the case law it cites, the

conduct complained of is not duplicative.  One claim is focused

on wrongful termination while the other is based on wrongful

treatment during his employment.  This is not the same conduct.

Second, only Kapossy may support dismissal, as a matter of law.[16]

But, Kapossy is not this case.  Although some facts overlap,

different facts are pleaded to support the breach of contract

and good faith and fair dealing claims.  They are not exactly

identical, so this claim will not be dismissed.

### ii. Whether the Claim is Implausible

Second, LIA argues that the good faith and fair dealing

claim – insofar as it is based on Plaintiff's wrongful

termination – is implausible.  LIA asserts the same argument it

did before: the termination was not wrongful (nor in bad faith)

because it was based on cause, not retaliation.  It also asserts

that LIA's willingness to bring in an outside consultant, the

timing of Plaintiff's complaints, and the Notice Letter and

Termination Letter all show that the termination was not in bad

faith.

As this Court decided supra, the contractual argument is

---

[16] It is unclear to this Court why LIA cites Borbely, as that
opinion arose after a full factual record had been created and
does not appear to stand for the proposition it is cited by LIA
to support.

not enough to defeat this claim at this point. LIA's remaining arguments are also unavailing. The hiring of a consultant and a retaliatory firing are not mutually exclusive. There are many factual scenarios that would accommodate both, and Plaintiff alleges that is the case here. The same could be said for the period of time between Plaintiff's termination and when he initially raised his concerns and the two letters sent to Plaintiff concerning his termination. The timing and the letters could certainly be pretextual and could serve as cover for retaliatory action. This Court must make reasonable inferences in favor of Plaintiff at this point. So, while the scenario alleged by Plaintiff may seem unlikely to LIA, it is entirely plausible. The test here is plausibility, not probability.

This Court will not dismiss this claim on these grounds. Defendant LIA is free to raise these arguments again upon a full factual record.

### iii. Whether the Claim Attempts to Alter the Express Terms of the Employment Agreement

Third, LIA argues that the good faith and fair dealing claim is actually an attempt to alter the terms of the employment agreement. Instead of addressing how the claim does so, Defendant LIA discusses how Plaintiff refused to take additional vacation when offered to him and how the coverage

call rates were entirely appropriate based on prior practice. Both of these assertions rely on information outside of the FAC. This Court has decided, <u>supra</u>, not to consider this information at this stage as it is not undisputedly authentic and a motion for summary judgment is not yet ripe.

Thus, the only argument Defendant LIA presents that this Court may possibly consider is its argument concerning the Employment Agreement. LIA claims the Employment Agreement gives LIA the right to "amend or modify" Plaintiff's vacation time "at any time for any reason." Thus, LIA contends Plaintiff cannot complain of LIA's actions because it had full discretion to alter Plaintiff's vacation arrangements. Plaintiff responds that this is not an attempt to alter the contract, but a valid good faith and fair dealing claim. Plaintiff states this type of claim may be based on an unreasonable exercise of discretion, which he alleges occurred here.

Plaintiff is correct. His good faith and fair dealing claim may be based on an unreasonable exercise of discretion by LIA. <u>See</u> <u>Jurista v. Aminox Processing, Inc.</u>, 492 B.R. 707, 757 (D.N.J. 2013) (stating New Jersey state law allows claims for good faith and fair dealing "to rectify a party's unfair exercise of discretion regarding its contract performance" (quoting <u>Kim v. Baik</u>, No. 06-3604, 2007 U.S. Dist. LEXIS 13553, at *11 (D.N.J. Feb. 27, 2007)). This is one of those cases.

The FAC states LIA exercised improper discretion in allowing others to take more vacation time than Plaintiff. That is enough to survive a motion to dismiss.[17]

**E. Standard for Motion for Leave to File an Amended Complaint**

The decision to grant or deny leave to amend pleadings under Federal Rule of Civil Procedure 15(a)(2) is committed to the sound discretion of the Court. Gay v. Petsock, 917 F.2d 768, 772 (3d Cir. 1990). Leave to amend is freely granted "when justice so requires," but may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

Amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted). To test for futility, the Court employs the Rule 12(b)(6)

---

[17] The arguments set forth by Defendant LIA in its reply brief are unavailing. They either rehash legal or factual arguments rejected supra or are irrelevant to the allegations made. For those reasons, this Court will not address them in any further detail here.

standard used for motions to dismiss.  <u>In re Burlington Coat</u>
<u>Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997).

### F.    Motion for Leave to File an Amended Complaint

Plaintiff requests that this Court allow him to amend the
FAC to allow two additional claims against Defendant LIA – one
for breach of the DCA (proposed Count Six) and one for
declaratory judgment concerning the DCA (proposed Count Seven).
Plaintiff also requests, in conjunction with these two new
claims, that it be allowed to add additional facts supporting
these claims.  Plaintiff has filed a proposed Second Amended
Complaint ("SAC").

Plaintiff states amendment should be granted here because
of the liberal standard and because there is no showing of undue
prejudice.  Defendant LIA argues, joined by the Shareholder
Defendants,[18] that Plaintiff's proposed amendment is futile for
two reasons.  First, LIA argues Plaintiff's claim is futile
because Plaintiff allegedly admits in his pleadings that he
breached the restrictive covenant.  Second, LIA argues that the
two claims in the SAC are subject to an arbitration agreement.
Under New Jersey law, LIA argues, these claims must be
arbitrated instead of being brought in Court.  Thus, for those
two reasons, it would be futile to present these claims to this

---

[18] None of these proposed claims are asserted against Shareholder
Defendants, so their opposition is technically unnecessary.

Court.

### a. Whether Amendment is Futile because Plaintiff's SAC Admits He Violated the Restrictive Covenant

Defendant LIA argues that amendment is futile here because the allegations made in the SAC show that Plaintiff violated the restrictive covenant. LIA alleges that Plaintiff admits he continues to have admitting privileges as a member of the medical staff at facilities within two miles of LIA. This, LIA asserts, is a clear breach of the restrictive covenant. LIA also asserts, through a declaration prepared by Defendant Broudy, that the restrictive covenant was not deleted from the Employment Agreement via board action at a September 14, 2017 meeting.

Plaintiff makes two arguments. First, Plaintiff argues that he is not "performing radiology" in his capacity at Lourdes facilities. Plaintiff asserts this puts his conduct outside the scope of the restrictive covenant. Second, Plaintiff argues that the restrictive covenant was rescinded by board action at a September 26, 2017 meeting.

This Court finds the new claims relating to the DCA are not futile on the grounds advanced by Defendant LIA. Defendant LIA has, again, improperly brought forth a declaration of a fellow defendant on what is – essentially – a motion to dismiss. Under the Rule 12(b)(6) standard, as articulated above, this Court can

only rely on the pleadings and the attachments thereto, unless it is a matter of public record or is undisputedly authentic. Defendant Broudy's declaration falls within none of those categories. This Court cannot consider it, and must rely upon the allegations made in the SAC.

As a result, the Court finds that Plaintiff has adequately alleged the restrictive covenant was removed from the Employment Agreement by board action taken at a September 26, 2017 meeting. Regardless of whether this Court believes at this point that Plaintiff has breached the restrictive covenant or not, it cannot find the new claims are futile on the grounds advanced by Defendant LIA. This Court will not deny leave to amend based on this argument by Defendant LIA. LIA is permitted to raise these arguments again on a fuller record.

### b. **Whether Amendment is Futile because Plaintiff's New Claims are Subject to Arbitration**

Second, LIA argues the new claims concerning the DCA are futile because the DCA is subject to an arbitration clause. The arbitration clause states, in full:

> Arbitration. Any controversy or claim arising out of or relating to this Agreement between Corporation, Employee and/or any of the beneficiaries hereunder shall be determined by arbitration in accordance with the rules then pertaining to the American Arbitration Association, and a judgment upon the award may be entered in any court having jurisdiction thereof. This arbitration provision shall not be applicable, except upon mutual agreement to the contrary, to any action relating to the enforcement of the restrictive covenant in this Agreement.

Defendant LIA asserts that this is a claim "arising out of or relating to" the Employment Agreement, thus requiring arbitration under New Jersey law.

Plaintiff counters by arguing this claim fits within an exception to the arbitration clause. Plaintiff asserts that the basis of the claims is the "enforcement of the restrictive covenant," which is clearly not subject to arbitration under the arbitration clause.

The parties did not address in detail whether federal or state law applies to this arbitration agreement. Regardless, this Court finds, whether the Federal Arbitration Act ("FAA") or the New Jersey Arbitration Act ("NJAA") applies is of no moment. The NJAA "sets forth near-identical provisions to 'its federal counterpart,'" the FAA. Cook v. Nordstrom, Inc., No. 13-5402 (RBK/AMD), 2013 U.S. Dist. LEXIS 176832, at *12 (D.N.J. Dec. 17, 2013) (quoting Levonas v. Regency Heritage Nursing & Rehab. Ctr., No. L-7610-09, 2013 N.J. Super. Unpub. LEXIS 2155, at *3 (N.J. Super. Ct. App. Div. Aug. 29, 2013)).

Here, the NJAA states "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." N.J. STAT. ANN. § 2A:23B-6(b). "In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549, and 950646, 584 F.3d 513, 524 (3d Cir. 2009) (quoting AT&T Techs., Inc. v. Communic'ns Workers of Am., 475 U.S. 643, 650 (1986)); see also Morgan Stanley & Co. v. Druz, No. A-2256-10T1, 2013 N.J. Super. Unpub. LEXIS 27, at *4 (N.J. Super. Ct. App. Div. Jan. 8, 2013) (noting the presumption of arbitrability under the New Jersey Arbitration Act)).

As written, this Court finds the arbitration clause does not apply. Within the arbitration clause, there is an exception for "any action relating to the enforcement of the restrictive covenant." "Relate to" has been interpreted by the Supreme Court as ordinarily meaning "'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th ed. 1979)).

This action "relates to" the "enforcement of the restrictive covenant." As LIA's own letters show – which are attached to the SAC - the reason LIA stopped payments under the DCA was because it claimed Plaintiff had breached the

43

restrictive covenant.  The central issue in both claims is intricately intertwined with the Employment Agreement's restrictive covenant.  The first issue is whether the restrictive covenant is still applicable or whether it was rescinded by the LIA board.  In other words, whether it may still be enforced in any capacity.  The second issue is, if it is still applicable, the scope of its enforcement.  Thus, both claims have some bearing upon the enforcement of the restrictive covenant.  As such, these claims fit within the exception to arbitration in the Employment Agreement and will be heard in this Court.

### CONCLUSION

For the reasons stated in this Opinion, this Court will deny Defendants' Motions to Dismiss and will grant Plaintiff's Motion for Leave to Amend to File a Second Amended Complaint.

An appropriate Order will be entered.


Date:  November 27, 2018            s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.